IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DEPLOY IT USA INC., a Georgia
corporation, ELLEN MCARDLE, and
DAVID MCARDLE,

        Plaintiffs,

v.

     Civil Action No. 2:20-CV-116-RWS

AARON BARNES,

        Defendant.

## AMENDED COMPLAINT FOR MONETARY DAMAGES AND EQUITABLE RELIEF

For their Complaint against Defendant Aaron Barnes, DeployIT USA Inc.,
Ellen McArdle, and David McArdle allege as follows:

### Introduction

1. Plaintiff Ellen McArdle owns 51%, and Defendant Barnes owns 49%,
of DeployIT USA Inc. ("DeployIT"), a Georgia corporation that provides
information technology ("IT") deployment services. Defendant Barnes has looted
DeployIT for his own personal benefit and is currently attempting to misappropriate
DeployIT's assets and corporate opportunities for a competitor, DeployIT USA Inc.,
a recently formed Indiana corporation (the "Indiana corporation"). In this action,

DeployIT seeks to halt Defendant Barnes' ongoing misconduct and obtain monetary relief to compensate it for Defendant Barnes' egregious breaches of his fiduciary duties.   In addition, the McArdles seek monetary relief for Defendant Barnes' defamation.

## Parties

2.     Plaintiff Ellen McArdle ("Mrs. McArdle") is a natural person domiciled in Georgia.

3.     Plaintiff David McArdle ("Mr. McArdle") is a natural person domiciled in Georgia.

4.     The McArdles are married.

5.     Defendant Aaron Barnes is a natural person domiciled in Indiana who may be served with process pursuant to O.C.G.A. § 9-10-94 by delivering a copy of the Summons and this Complaint to his usual place of abode, 10534 Golden Grove Avenue, Dyer, Indiana 46311.

6.     Mrs. McArdle owns 51% of DeployIT.  Defendant Barnes owns 49% of DeployIT.

7.     At all relevant times, Mrs. McArdle was and is the sole Director and Chief Executive Officer ("CEO") of DeployIT.

8.     At all relevant times, Mr. McArdle was and is the Secretary of DeployIT USA.

9.     At all relevant times, Defendant Barnes was the Chief Financial Officer ("CFO") and Chief Operations Officer ("COO") of DeployIT USA.

### Jurisdiction and Venue

10.     This Court has jurisdiction over the subject matter of this action.  *See* 28 U.S.C. § 1332.

11.     Defendant Barnes has transacted business in the State of Georgia within the meaning of O.C.G.A. § 9-10-91(1).  In his capacity as the CFO and COO of a Georgia corporation with its principal office in Georgia, Defendant Barnes purposefully directed thousands of phone calls, emails, text messages, and other intangible contacts into the State of Georgia.  Additionally, Defendant Barnes has availed himself of the benefits of doing business in the State of Georgia.

12.     DeployIT's claims against Defendant Barnes arise out of and relate to his activities in the State of Georgia.

13.     Defendant Barnes caused a tortious injury to the McArdles in the State of Georgia by defaming the McArdles outside of the State of Georgia.

14.     This Court's exercise of jurisdiction over Defendant Barnes' person would be reasonable, fair, and otherwise consistent with due process.

15.     Accordingly, this Court has jurisdiction over Defendant Barnes' person pursuant to O.C.G.A. § 9-10-91(1) and (3).

16.     The venue of this action is proper in Forsyth County.  *See* O.C.G.A. § 9-10-93.

### DeployIT

17.     DeployIT principally installs and deploys information technology hardware and has been doing so in commerce since at least May or June 2018.

### Defendant Barnes Defrauds Deploy IT's Factoring Provider

18.     DeployIT has historically utilized a factoring arrangement with Goodman Factors, a division of Independent Bank, for financing its operations.

19.     DeployIT alleges upon information and belief that, beginning in or around August 2019, Defendant Barnes submitted fraudulent invoices to Goodman Factors from three (3) different DeployIT customers, to wit: Comm-Works, Master Technology Group, and Granite Telecommunications.  Attached hereto as Exhibit "A," and incorporated by reference herein, is a demand letter from Goodman Factors to DeployIT setting forth the factual particulars of Defendant Barnes' scheme.

20.     The McArdles were not involved in and had no prior knowledge of Defendant Barnes' scheme to defraud Goodman Factors.

21.     On April 27, 2020, Defendant Barnes falsely represented to Goodman Factors that the McArdles engaged in "gross misconduct" by submitting these invoices in question to Goodman Factors.   A true and correct copy of this communication is attached hereto as Exhibit "B."   These representations were disparaging, unprivileged, and defamatory per se, and Defendant Barnes made them knowing they were false.

22.     The McArdles allege upon information and belief that Defendant Barnes has published additional defamatory statements to other third parties that will only be uncovered through compulsory discovery.   Among other things, Defendant Barnes has repeatedly represented that "cease and desist" letters have been circulated to DeployIT's customers about the McArdles.

## Defendant Barnes then Misappropriates DeployIT's Income to Fund his Competing Business

23.     From December 30, 2019 to February 24, 2020, Defendant Barnes had DeployIT pay Michael Hayes a total of $325,265, purportedly for IT installation services.

24.     DeployIT alleges upon information and belief that Michael Hayes in fact never performed any such services and was paid, with Defendant Barnes' full and actual knowledge, for no-show jobs.

25.     The McArdles were not involved in and had no prior knowledge of Defendant Barnes' conduct.

26.     Defendant Barnes is partners with Michael Hayes in an Indiana corporation called Region Sports and Collectibles, Inc. dba "The Collectors Cave," which principally buys and sells sports memorabilia.

27.     DeployIT alleges upon information and belief, as well as Defendant Barnes' admission against interest to Mr. McArdle, that Defendant Barnes had DeployIT pay Mr. Hayes' fraudulent invoices for the purpose of capitalizing The Collectors Cave.

**Defendant Barnes Steals DeployIT's PPP Loan**

28.     BMO Harris Bank N.A. ("BMO Harris") recently loaned DeployIT $392,700 through the Paycheck Protection Program ("PPP").

29.     The Small Business Administration ("SBA") PPP guidelines are clear that the SBA will forgive PPP loans if recipients maintain their staff and payroll and PPP funds are solely used for payroll, mortgage interest, rent, and utilities.

30.     Despite this, Defendant Barnes had DeployIT pay $80,000 to various vendors using PPP funds, which DeployIT will have to repay with interest.

31.     Furthermore, Mr. Hayes withdrew the balance of DeployIT's PPP loan from BMO Harris and transferred same to Defendant Barnes, who has deposited it into an account not in the name of DeployIT USA Inc., the Georgia corporation.

32.     Based on the McArdles' communications with BMO Harris, DeployIT expects BMO Harris to fund a substantial SBA Economic Injury Disaster Loan ("EIDL") to DeployIT in the very near future.

33.     Based on his prior conduct with respect to the PPP loan, DeployIT fears Defendant Barnes will attempt to divert DeployIT's EIDL to personal, non-business purposes.

### Defendant Barnes Attempts to Freeze Out Plaintiff McArdle

34.     Leveraging his control over DeployIT's available cash resources and back office operations, Defendant Barnes has recently begun attempting freeze Mrs. McArdle out of her equity in DeployIT.

35.     On March 22, 2020, Defendant Barnes created a new Indiana corporation called "DeployIT USA Inc."  *See* Exhibit "C."

36.     On March 23, 2020, Defendant Barnes amended DeployIT's information with Georgia's Secretary of State to replace Mrs. McArdle as CEO with himself and to replace Mr. McArdle as Secretary with Defendant Barnes' wife.  *See* Exhibit "D."

37.     On March 23, 2020, Defendant Barnes purported to dissolve DeployIT. *See* Exhibit "E."

38.     Defendant Barnes lacked authority to replace DeployIT's officers and to dissolve DeployIT.  Plaintiff McArdle is DeployIT's sole Director and did not authorize or approve of any of Defendant Barnes' actions.

39.     Then, on or about March 23, 2020, Defendant Barnes presented Plaintiff McArdle with a Stock Repurchase Agreement, pursuant to which DeployIT would pay $1.00 for Plaintiff McArdle's controlling interest.  *See* Exhibit "F."  It is noteworthy that the Stock Repurchase Agreement indicates that DeployIT is an Indiana corporation.  Mrs. McArdle does not now and never has owned any interest in an Indiana corporation.

40.     51% of DeployIT is worth substantially more than $1.00.  Among other things, DeployIT USA has just recently deployed "DeployIT Symphony," a workforce management software.  DeployIT's principal competitor in this space, WorkMarket, was last valued at $72 million and was purchased by ADP in 2018.

41.     Defendant Barnes intends to misappropriate Symphony from DeployIT, as evidenced by his formation of "Symphony Technology Inc." in Indiana on May 1, 2020.

42.     Defendant Barnes has also terminated the McArdles' access to their DeployIT email accounts.

43.     The McArdles also allege upon information and belief that Defendant Barnes has falsely represented to various DeployIT's customers and vendors that their employment with DeployIT has been terminated for cause.

**Defendant Barnes' Termination**

44.     On April 29, 2020, Mrs. McArdle, in her capacity as DeployIT's Director and CEO, terminated Defendant Barnes' employment.

45.     On May 10, 2020, upon proper notice, DeployIT's shareholders held a special meeting and appointed Mrs. McArdle as DeployIT's sole Director.  A true and correct copy of the meeting minutes are attached hereto as Exhibit "G."

46.     Immediately thereafter, DeployIT's Board of Directors removed Defendant Barnes as an officer.  A true and correct copy of the meeting minutes are attached hereto as Exhibit "H."

47.     Defendant Barnes has ignored DeployIT's Board of Directors and is continuing to misappropriate DeployIT's funds and corporate opportunities for his benefit and/or the benefit of the Indiana corporation.

### Count I: Common Law Trademark Infringement

48.     Plaintiffs incorporate the allegations in Paragraphs 1 through 47 of the Complaint by reference herein.

49.     Georgia law recognizes a claim for common law trademark infringement. *See SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc*., 455 F. Supp. 2d 1347, 1365 (N.D. Ga. 2006).

50.     DeployIT has a protected right in the trade name "DeployIT" nationwide because (a) DeployIT was the first to use that mark in connection with the for-profit installation/deployment of information technology hardware; and (b) the mark is both inherently distinctive and has acquired distinctiveness through secondary meaning in the mind of consumers.

51.     Defendant Barnes' use of the mark "DeployIT" in connection with the operation of a competing entity is likely to cause consumer confusion or misunderstanding as to the affiliation, connection or association between DeployIT USA Inc., the Indiana corporation, and DeployIT USA Inc., the Georgia corporation.

52.     DeployIT lacks an adequate remedy at law for Defendant Barnes' infringement of its common law trademark.

53.     Plaintiff is entitled to Order temporarily, preliminarily and permanently enjoining Defendant Barnes from operating DeployIT USA Inc., the Indiana

corporation, to provide the same or similar services as DeployIT USA Inc., the Georgia corporation.

### Count II: Temporary, Preliminary, and Permanent Injunctive Relief

54.     Plaintiffs incorporate the allegations in Paragraphs 1 through 47 of the Complaint by reference herein.

55.     In addition to enjoining Defendant Barnes from infringing on DeployIT's trademark, Plaintiffs request the Court (a) restrain and enjoin Defendant Barnes, and his agents, servants, attorneys, and any other persons in active concert or participation with him who receive notice of the Court's Order, from: (i) misappropriating or otherwise using any of DeployIT's assets and disposing of DeployIT funds, monies, or other property, including, but not limited to, Symphony, including, but not limited to, for or on behalf of DeployIT USA Inc., the Indiana corporation; (ii) destroying, altering or otherwise changing any of DeployIT's books and records and sabotaging, damaging or otherwise interfering with DeployIT's computer network(s) and processes; and (iii) communicating with the Georgia Secretary of State about DeployIT's corporate status/governance; and (b) require Defendant Barnes, and his agents, servants, attorneys, and any other persons in active concert or participation with him who receive notice of the Court's Order, to reasonably assist and cooperate with DeployIT in transitioning all matters arising of

Defendant Barnes' employment, including, but not limited to, providing access regarding all information technology, finance programs, and bank accounts, all passwords to all aspects of DeployIT's network, and any and all other information essential to DeployIT's business operations.

56.     Said injunction would preserve the status quo, which is presently endangered, pending a final adjudication on the merits.

57.     There is a substantial threat Plaintiffs will be irreparably injured unless the Court enters said injunction.

58.     The threatened injury to Plaintiffs outweighs any putative harm that said injunction might do to Defendant Barnes.

59.     There is a substantial likelihood that Plaintiffs will prevail on the merits.

60.     The requested relief would serve the public interest.

**Count III: Breach of Fiduciary Duty**

61.     DeployIT incorporates the allegations in Paragraphs 1 through 47 of the Complaint by reference herein.

62.     Defendant Barnes has fiduciary duties of due care, loyalty, and good faith to DeployIT.

63.     As alleged herein, Defendant Barnes has breached those duties.

64.     As a direct and proximate result of Defendant Barnes' breach of his fiduciary duties, DeployIT has been damaged in an amount to be determined at trial.

65.     Furthermore, as an unfaithful agent, Defendant Barnes is not entitled to retain any monies paid to him, even if otherwise appropriately earned, during the period of time he was unfaithful to DeployIT, and DeployIT is entitled to claw-back those amounts.  *See* O.C.G.A. § 10-6-31.

66.     Defendant Barnes' actions authorize the imposition of punitive damages under O.C.G.A. § 51-12-5.1 in that, as alleged herein, they show willful misconduct and fraud.

67.     Defendant Barnes' conduct, as alleged herein, was not merely intentional but also willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

68.     Defendant Barnes acted with the specific intent to cause harm to DeployIT within the meaning of O.C.G.A. § 51-12-5.1(f).

## Count IV: Violations of the Georgia RICO Act

69.     DeployIT incorporates the allegations in Paragraphs 1 through 47 of the Complaint by reference herein.

70.     As alleged herein, Defendant Barnes' misappropriation of DeployIT's funds, including, although not necessarily limited to, PPP loan proceeds and all

amounts paid to Michael Hayes, constituted theft by taking in violation of O.C.G.A. § 16-8-2.

71.    Defendant Barnes knowingly, willfully, and intentionally engaged in such theft by taking.

72.    Defendant Barnes engaged in a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(4)(A) because he committed or attempted to commit at least two incidents of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, and/or methods of commission and otherwise interrelated by distinguishing characteristics and are not isolated incidents.

73.    Defendant Barnes' racketeering activity had the same or similar intent—*i.e.*, to steal or otherwise misappropriate DeployIT's money.

74.    Defendant Barnes' racketeering activity had the same or similar results—*i.e.*, Defendant Barnes unlawfully took or appropriated DeployIT's property with the intention of depriving it of said property.

75.    Defendant Barnes' racketeering activity had the same victim—*i.e.*, DeployIT.

76.     Defendant Barnes' racketeering activity had the same or similar methods of commission—*i.e.*, Defendant Barnes' abuse of his fiduciary duties and position of trust to defraud DeployIT.

77.     Although Defendant Barnes' racketeering activities were numerous and occurred at different times, they are nonetheless sufficiently interrelated or connected so as to create a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(4)(A).

78.     Defendant Barnes knowingly and willfully acquired and maintained, directly or indirectly, an interest in and/or control over DeployIT's personal property (*i.e.*, money, assets, and intellectual property) through the aforementioned pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a).

79.     As a direct and proximate result of Defendant Barnes' violation of O.C.G.A. § 16-14-4(a), DeployIT has been injured within the meaning of O.C.G.A. § 16-14-6(c).

80.     DeployIT is entitled to recover from Defendant Barnes such damages as it will make it whole and compensate it for its injuries.

81.     DeployIT is also entitled to recover three times her actual damages, punitive damages, and attorneys' fees in the trial and appellate courts pursuant to O.C.G.A. 16-14-6(c).

82.     Defendant Barnes' actions authorize the imposition of punitive damages under O.C.G.A. § 51-12-5.1 in that, as alleged herein, they show willful misconduct and fraud.

83.     Defendant Barnes' conduct, as alleged herein, was not merely intentional but also willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

84.     Defendant Barnes acted with the specific intent to cause harm to DeployIT within the meaning of O.C.G.A. § 51-12-5.1(f).

**Count V: Defamation**

85.     The McArdles incorporate the allegations in Paragraphs 1 through 47 of the Complaint by reference herein.

86.     Defendant Barnes represented to Goodman Factors that McArdles engaged in "gross misconduct" by submitting fraudulent invoices on behalf of DeployIT.

87.     The McArdles also allege upon information and belief that Defendant Barnes has falsely represented to various DeployIT's customers and vendors that their employment with DeployIT has been terminated for cause.

88.     Said statements were false and disparaging.

89.     Said statements were unprivileged.

90.    Defendant Barnes knew said statements were false.

91.    Said statements were defamatory per se, and the McArdles are entitled to recover monetary damages irrespective of any special harm.

### Count VI: Litigation Expenses, Including Attorneys' Fees

92.    Plaintiffs incorporate the allegations in Paragraphs 1 through 91 of the Complaint by reference herein.

93.    As alleged herein, Defendant Barnes has acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense. Accordingly, pursuant to O.C.G.A. § 13-6-11, Plaintiffs seek, and are entitled to recover, their litigation expenses, including reasonable attorneys' fees, incurred in this action.

### Prayer for Relief

94.    Accordingly, Plaintiffs request the Court:

(a)    On a temporary, preliminary, and permanent basis, restrain and enjoin Defendant Barnes from operating DeployIT USA Inc., the Indiana corporation, from providing the same or similar services as DeployIT USA Inc., the Georgia corporation.

(b)    On a temporary, preliminary, and permanent basis, (i) restrain and enjoin Defendant Barnes, and his agents, servants, attorneys, and any other

persons in active concert or participation with him who receive notice of the Court's Order, from: (x) misappropriating or otherwise using any of DeployIT's assets and disposing of DeployIT funds, monies, or other property, including, but not limited to, Symphony, including, but not limited to, for or on behalf of DeployIT USA Inc., the Indiana corporation; (y) destroying, altering or otherwise changing any of DeployIT's books and records and sabotaging, damaging or otherwise interfering with DeployIT's computer network(s) and processes; and (z) communicating with the Georgia Secretary of State about DeployIT's corporate status/governance; and (ii) require Defendant Barnes, and his agents, servants, attorneys, and any other persons in active concert or participation with him who receive notice of the Court's Order, to reasonably assist and cooperate with DeployIT is connection with transitioning all matters arising of Defendant Barnes' employment, including, but not limited to, providing access regarding all information technology, finance programs, and bank accounts, all passwords to all aspects of DeployIT's network, and any and all other information essential to DeployIT's business operations;

(c)     Enter judgment against Defendant Barnes and in favor of DeployIT on Count III (breach of fiduciary duty) and award DeployIT such damages, actual or nominal, general and special, compensatory and punitive, as DeployIT is entitled to recover;

(d)     Enter judgment against Defendant Barnes and in favor of DeployIT on Count IV (violations of the Georgia RICO Act) and award DeployIT such damages, actual or nominal, actual and treble, general and special, compensatory and punitive, plus expenses and fees, as DeployIT is entitled to recover;

(e)     Enter judgment against Defendant Barnes and in favor of the McArdles on Count V (defamation) and award the McArdles such damages, actual or nominal, general or special, compensatory and punitive, as the McArdles are entitled to recover;

(f)     Enter judgment against Defendant Barnes and in favor of Plaintiff on Count IV (litigation expenses) and award Plaintiffs their litigation expenses, including reasonable attorneys' fees, incurred in this action; and

(g)     Award Plaintiffs such other and further relief as the Court deems proper.

Dated: May 18, 2020.

/s/ *William Daniel Davis*
Cary Ichter
Georgia Bar No. 382515
William Daniel Davis
Georgia Bar No. 746811

19

Ichter Davis LLC
3340 Peachtree Road NE
Suite 1530
Atlanta, Georgia 30326
(404) 869-7600
cichter@ichterdavis.com
ddavis@ichterdavis.com

Attorneys for Plaintiffs

## **Certificate of Service**

I hereby certify I filed a copy of the foregoing Amended Complaint for Monetary Damages and Equitable Relief using the CM/ECF system, which will send notice of such filing to all counsel of record.

Dated: May 18, 2020.

*/s/ William Daniel Davis*
William Daniel Davis